**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1.  RODNEY JONES, On Behalf of Himself and All Others Similarly-Situated,<br>            Plaintiffs,<br>vs.<br>1.  Local 798 Of The United Association Of Journeymen And Apprentices Of The Plumbing And Pipefitting Industry Of The United States And Canada, Afl-Cio,<br>            Defendant. | Case No. _____<br><br>JURY TRIAL DEMANDED<br>ATTORNEY'S LIEN CLAIMED |

## COMPLAINT

Plaintiff Rodney Jones ("Plaintiff") on behalf of himself and all others similarly-situated state the following for their claims against Defendant Local 798 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada AFL-CIO ("Defendant Local 798"):

**I.      INTRODUCTION**

**A.      Defendant Local 798 Had a Well-Established Practice and Policy of Intentionally Discriminating Against Minorities and Women From Its Formation in 1949 Up Through 1986, When the EEOC Successfully Sued Local 798 Under Title VII.**

1.      This is a class action brought by individual and class representative Plaintiff Rodney Jones on his own behalf and on behalf of the proposed class identified below who were unlawfully denied advancement and employment opportunities by Defendant Local 798 due to their race and/or color.

2.      Defendant Local 798 has a long history of discrimination against minorities and women. For the first 40 years of its existence, until the mid-80s, Defendant Local 798 had no

1

black members and no female members. Defendant Local 798's membership was exclusively white males. Blacks and females were barred from Local 798 throughout its 42-state jurisdiction throughout the history of the Union.

3. Nepotism was the primary means of membership recruitment within Local 798 for over four decades. From the 1970s through the 1980s, most new members were male relatives of existing members. Members were only permitted to recruit white male relatives who were cousins, brothers, sons, nephews, sons-in-law and/or uncles. No female relatives were permitted to be recruited for membership. For decades following its formation in 1949, there was an unwritten practice that if a business agent or welder foreman hired a woman or black for work on the pipeline, that agent or foreman would be fired. EEO-3 reports prepared by Local 798 for the following periods reflect that Local 798 did not have any female or black members as of these dates: September 22, 1977; July 18, 1979; July 10, 1980; May 12, 1982; June 10, 1983; April 20, 1984; and February 12, 1985.

4. In light of this racist, misogynistic history, in the mid-80s, the Equal Employment Opportunity Commission sued Defendant Local 798 for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq*. In an opinion reported at 646 F.Supp 318 (N.D. Okl. 1986), the U.S. District Court of the Northern District of Oklahoma made the following conclusions of law:

- Since at least July 2, 1965, Local 798 has engaged in unlawful employment practices in violation of Title VII, 42 U.S.C. § 2000e-2, by discriminating against blacks and/or women on the basis of race, color and sex by excluding blacks and women from membership, and failing and refusing to refer blacks and women for employment.

- Local 798 has engaged in intentional discrimination resulting in desperate treatment of blacks and woman. The policies and practices of Local 798 have had a discriminatory effect resulting in disparate impact on blacks and women.

- Local 798's membership and referral practices are in violation of Title VII in that Local 798 regularly and purposefully treats blacks and females less favorably than white males.

- Between 1976 and 1985 Local 798 had a policy of excluding blacks and females that was announced openly at its membership meetings.

- Local 798 had a policy of firing females when non-union contractors were taken over who had female employees on the pipeline.

- Local 798 had a policy that business agents and welder foremen were to decline requests by blacks and females for membership in the union.

- Officials and officers of Local 798 had a practice of using racial and sexist slurs.

- There is overwhelming evidence that a discriminatory purpose has been the motivating factor in the membership and referral practices of Local 798.

- Local 798 engaged in a system-wide pattern and practice of employment discrimination for no legitimate justifiable business necessity.

- In pursuing its exclusionary and nepotistic policies, Local 798 engaged in a pattern and practice of discrimination on the basis of race and sex in its membership and referrals.

- Local 798's reputation for excluding blacks and women has had a chilling effect on applicants. Women and blacks were chilled (or deterred) in their desire to apply for membership.

- The evidence establishes liability by Local 798 in violation of Title VII. Local 798 has practiced blatant discrimination over an extended period of time. The evidence shows that Local 798 has consciously and intentionally prevented females and blacks from becoming members, and from affectively participating as welder or welder helpers in the pipeline industry.

- The court finds for the Equal Employment Opportunity Commission and against Defendant Local 798, on its claim for liability under Title VII and that Defendant Local 798 is engaged in unlawful employment discrimination based on race and sex in its membership and referrals.

**B.　Unfortunately, Local 798's Pattern and Practice of Intentionally Discriminating Against Minorities Has Continued After 1986 and Continues Up Through Today.**

5.　Unfortunately, the 1986 litigation did not cause Defendant Local 798 to change its pattern and practice of intentionally discriminating against minorities and women. It merely caused Defendant Local 798 to change the way it engaged in such discrimination.

6.　The position in Defendant Local 798 that is the most highly regarded and most highly compensated is that of "Journeyman."

7.　The position of "Helper" is a less highly regarded and lower-compensated position than that of Journeyman.

8.　There are relatively no minorities or women who hold the position of journeyman in Defendant Local 798, and the number of minorities are extremely disparate in comparison to white males holding this position.

9.　Moreover, whites with less seniority than minorities and women, or even no seniority, can join Defendant Local 798 and promptly become Journeymen.

10.　As a result of the foregoing, minorities and women are relegated to permanent second-class status in Defendant Local 798.

11.　Because minorities and women are effectively barred from Journeyman positions, their lifetime earnings in this industry are hundreds of thousands of dollars less than white male Journeymen.

12.　In addition, as detailed below, minorities and women members of Defendant Local 798 are subject to the most egregious race-based offensive language and conduct.

**II.　PARTIES**

13. Plaintiff Rodney Jones, Black male, is an individual who resides in Ellenwood, GA, and who became a member of Defendant Local 798 since on or about November 5, 2005.

14. Defendant Local 798, which is headquartered in Tulsa, Oklahoma, is a member organization of the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO.

15. Defendant Local 798 is an unincorporated association of participating employees which deals with employers concerning terms and conditions of employment.

16. Defendant Local 798 is a labor organization engaged in an industry affecting commerce.

### III. JURISDICTION AND VENUE

17. This Court has personal jurisdiction over Defendant Local 798 because Defendant transacts business in this District.

18. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

19. Plaintiffs' Count III arises under the Civil Rights Act of 1866, 42 U.S.C. § 1981(a).

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3), in that the conduct giving rise to the claims herein occurred within this District and Division, and the unlawful employment practices alleged herein have been committed in this District and Division.

### IV. THE FACTS

21. Plaintiff Jones is an African American.

22. He was a member of the Defendant Union during the relevant time period, and he worked as a welder helper with the Union.

23. He was given an assignment as a welder helper for a company named Meade in Warsaw, Indiana.

24. He worked on this assignment from May 2019 until August of 2019.

25. There, he experienced a hostile-work environment.

26. One welder named Chris North would taunt him with racial slurs and tell Plaintiff how the Union used to not allow blacks within its ranks.

27. In August of 2019, Chris North stated that he no longer wanted to work with Plaintiff Jones, and Plaintiff has reason to believe this was based upon his race.

28. Another welder, named Anthony Gondike, used the word "nigga" with no consequence even though Plaintiff Jones brought it to the Job Steward's attention.

29. Cecil Shelton was a Journeyman on the Warsaw, Indiana assignment, and he would habitually make black and racist jokes in Plaintiff's presence to punish Plaintiff with no consequence.

30. Indeed, there are never any consequences for white Union members who make racial slurs against Plaintiff Jones in order to intimidate him from advancement and membership.

31. Plaintiff Jones approached Jason Spurgeon, who was the welder foreman on the Warsaw assignment, and Plaintiff asked him for hours welding, so he could qualify for a journeyman position.

32. Defendant's Foremen Spurgeon replied that Plaintiff Jones could not receive hours to working on welding, and he denied him the ability to advance to journeyman.

33. However, Plaintiff Jones noticed that other less qualified white members were given such hours, so they could advance to journeymen.

34. Defendant has denied Plaintiff Jones and other Black helpers the ability to advance based upon their minority status, race, and/or color.

35. Plaintiff Jones is not alone.

36. There are other examples of Defendant's maliciousness to minorities in its ranks.

37. Another Union member, J.M. McIntosh also experienced a racially-hostile work environment permitted by Defendant Local 798 began at the very beginning of his membership in Local 798. As an example, in January 2009, in Shelbyville, IN, J.M. went into a portable toilet and found "NIGGER" in bold black ink written across the inside. Despite complaining to the top union leadership onsite, that portable toilet stayed at that location throughout J.M.'s work there, with the racially offensive language still prominently displayed.

38. The following year, in or around September 2010, while working in Miles City, MT, J.M. was the subject of verbal attacks by white co-workers when he defended then-president Obama in the face of their offensive remarks. Thereafter, welder foreman Bill Davis subjected J.M. to race-based harassment throughout his work in Miles City at that jobsite.

39. J.M. filed a grievance with Defendant Local 798 against Davis, but to no avail.

40. On or about July 14, 2013, in Coldwater, MI, a white co-worker threw a rock at J.M., hitting him. Defendant did nothing.

41. After being hit by the rock, J.M. began experiencing problems with his right eye and asked to be taken to the hospital. Bill Ferguson and Pasquale, the senior members of Defendant Local 798 onsite, refused to take J.M. to the hospital.

42. J.M. is now partially blind in that eye.

43. Several days earlier, a white welder got a piece of metal in his eye, and after contacting welder foreman Bill Ferguson and Pasquale, he was immediately taken to the doctor.

44. In November 2014, in Montrose, PA, a white co-worker of J.M's used the word "nigger" in a conversation. J.M. took offense and asked that the co-worker be removed from the job.

45. The next work day, J.M. was told by the onsite Local 798 officer to shut up and to never talk about the situation. J.M. was further told that if he did not like being told to not talk about the situation, he should quit.

46. In January 2017, in Cusetta, AL, a white welder almost hit J.M. with his truck, on purpose.

47. The two exchanged words, but only J.M. was removed from the jobsite by welder foreman Bill Clendenin, who is white.

48. The next morning, J.M. talked with the Local 798 Job Steward, who is white, who said that both parties would be written up.

49. The following day, J.M. was fired from the job but the white welder who started the incident stayed on the job with only a write up.

## V.   CLASS ALLEGATIONS

50. Defendant Local 798 engages in a pattern and practice of intentional discrimination against black members in violation of 42 USC § 1981(a) by failing and refusing to promote minorities from the position of Helper to higher and better-compensated positions.

51. Defendant Local 798 also permits a racially hostile work environment targeting minorities in violation of Section 1981.

52. Defendant Local 798's violations of Section 1981 are intentional and willful.

53. Plaintiff (as class representative) brings this action on behalf of himself and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined classes:

> Class: All members of Defendant Local 798 who are races other than White or Caucasian who were qualified for, and sought a position or hours of a Journeymen or other position above the rank of Helper during the applicable statute of limitations period as established by 28 USC § 1981(a), preceding the filing of this action and during its pendency, and who were denied the Journeymen position or other position above that of a Helper.

54. *Numerosity*: The classes are so numerous that joinder of all members is impracticable. Upon information and belief, the classes exceed 500 members. The names and addresses of the class members are identifiable through documents maintained by Defendant Local 798, and the class members may be notified of the pendency of this action by published and/or mailed notice.

55. *Typicality*: Plaintiff's claims are typical of the members of the classes. Like other class members, Defendant Local 798 failed and refuse to promote the individual class representative to a position beyond Helper following his application to those higher positions, and the class member was subject to an unlawful, hostile work environment condoned by Defendant Local 798 in violation of Section 1981.

56. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly given that individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in court against a substantial and well-funded defendant, such as Defendant Local 798.

57. *Adequacy*: The class representative will fairly and adequately protect the interest of the classes.

58. The class representative has retained counsel experienced in complex class litigation.

59. The representative, nor the undersigned counsel, have any interest antagonistic to or in conflict with the members of the classes they seek to represent. The class representative is aware of his responsibilities to the putative classes and has accepted such responsibilities.

60. *Commonality*: Common questions of law and fact exist as to all members of each class and predominate over any question solely affecting individual members of each class, including but not limited to:

   a. Whether Defendant unlawfully failed and refused to promote qualified non-white members to Journeyman in violation of 28 USC § 1981(a); and

   b. Whether Defendants' actions were "willful."

61. This case is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(1) because prosecution of actions by individual members of each class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant Local 798.

62. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to each class predominate over any questions affecting only individual members of each class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant Local 798's common and uniform policies and practices denied each class member the opportunity for advancement beyond the Helper position in Defendant Local 798. The damages suffered by the individual members of each class are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate

need for unduly duplicative litigation that might result in inconsistent judgments about Defendant Local 798's practices.

63. Plaintiff intends to send notice to all members of each class to the extent required by Rule 23. The names and addresses of each class member are available from Defendant Local 798.

**VI. THE CLAIMS**

**COUNT I: Race Discrimination Under 42 U.S.C. § 1981.**

64. Plaintiff restates and incorporates all previous paragraphs as if rewritten here.

65. Plaintiff is Black.

66. Plaintiff was qualified for and applied for the Journeymen position and welder hours with Defendant Local 798 within the statute of limitations period.

67. Despite those qualifications, as detailed above, Defendant Local 798 failed and refused to allow the Plaintiff/class representative (and all others similarly-situated) to advance to Journeymen.

68. Defendant Local 798 promoted less-qualified white males.

69. As a result, the Plaintiff/class representative was treated less favorably than similarly-situated Caucasian members of Defendant Local 798.

70. The actions of Defendant Local 798 were willful, wanton and malicious in nature.

71. As a direct and proximate result of Defendant Local 798's unlawful, discriminatory conduct, the Plaintiff and individual representative (and all other individuals similarly-situated) have been injured and are entitled to damages under 42 USC § 1981(a).

**VII. PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff/class representative Jones, on behalf of himself and all other individuals similarly-situated request that this Court find for him and each class identified above, and award the following:

a) An order certifying this action as a class action under Rule 23;

b) That Defendant has violated 42 USC § 1981(a) as to the Plaintiff/class representative, and as to Class III identified above;

d) That Defendants' acts were willful and entitle Plaintiff/class representative and each class member to all available statutory damages;

e) Any compensatory damages available;

f) Interest;

g) Attorneys' fees;

h) Punitive damages;

i) Court costs and litigation expenses; and

j) Any other relief available at law or at equity.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all matters so triable.

Respectfully submitted,

Rachel L. Bussett, OBA 19769
Bussett Legal Group, PLLC
2201 N. Classen Blvd.
Oklahoma City, OK. 73106
Phone:  405-605-8073
Fax:  405-212-9112
E-mail:  PPodolec@BussettLegal.com
**JURY TRIAL DEMANDED**
**ATTORNEY'S LIEN CLAIMED**