## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

**RODNEY JONES, on behalf of himself
and all others similarly situated,**

     **Plaintiff,**

**v.**

**4:20-cv-00585-CRK-CDL**

**LOCAL 798 OF THE UNITED ASSOCIATION
OF JOURNEYMEN AND APPRENTICES OF
THE PLUMBING AND PIPEFITTING
INDUSTRY OF THE UNITED STATES AND
CANADA, AFL-CIO,**

     **Defendant.**

## OPINION AND ORDER

Before the Court is a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) by Defendant Local 798 of the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO ("Local 798"). Local 798 seeks to dismiss four racial-discrimination claims brought against it by Plaintiff Rodney Jones under 42 U.S.C. § 1981, and 42 U.S.C. § 2000e ("Title VII"). For the following reasons, Local 798's motion to dismiss is granted, and Jones' claims are dismissed without prejudice.

# BACKGROUND[1]

Local 798 is a member organization of the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO.  First Am. Class Action Compl. ¶ 2, May 18, 2021, ECF No. 19 ("Compl.").  Local 798's members are classified as either "helpers" or "journeymen." Id. ¶ 26.  The journeyman position is further divided into two roles: "journeyman welder" and "journeyman spacer."  Id. ¶¶ 30–31.  Jones joined Local 798 as a helper in 2005 and is still a helper.  Id. ¶¶ 39–41.

When a member of Local 798 is hired to work at a particular jobsite, Local 798 and signatory employer agree to operate under a collective bargaining agreement known as the National Pipeline Agreement ("CBA").  Id. ¶ 17.  The CBA contains a non-discrimination provision, prohibiting Local 798 and signatory employers from taking "any action or refus[ing] to take any action which shall discriminate against any individual with respect to his compensation, conditions, or privileges of employment because of the individual's race, age, color, religion, sex, national origin or disability."  Id. ¶ 18.  Although the CBA now contains a non-discrimination provision, Local 798 has a discriminatory history against blacks and other minority groups.  Id. ¶¶ 11–15, 18.  For the first 40 years of its existence, Local 798 did not

---

[1] The Court includes facts from the First Amended Class Action Complaint, see ECF No. 19, and Jones' Equal Opportunity Employment Commission ("EEOC") Charge, see ECF No. 37-1, which the Court assumes to be true for the purpose of this Opinion and Order.  The Court considers Jones' EEOC Charge, which the Defendant filed as an exhibit to its motion to dismiss, because the charge is central to Jones' claim, referenced in his complaint, and because Jones does not dispute its authenticity.  See GFF Corp. v. Assoc'd Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).

4:20-cv-00585-CRK-CDL

allow blacks into its organization.  Id. ¶ 12.  Although the Equal Employment Opportunity Commission ("EEOC") successfully sued Local 798 in the 1980s, that ruling did not stop Local 798 from discriminating against minorities.  Id. ¶¶ 15–16.

Throughout his membership with Local 798, other workers have directed racial bigotry at Jones on the jobsite.  Id. ¶ 42.  In 2017, while working on a jobsite in Detroit, a co-worker commented to Jones about black people being lazy and taking handouts.  Id. ¶ 43.  Jones voiced his disapproval of such comments and reported this event to Local 798's steward.  Id.  A "steward" is the Local 798 on-site representative who receives reports of grievances.  Id. ¶ 20.  The steward said he would "take care of it," but did nothing.  Id. ¶ 43.  In 2018, someone hung a noose at a jobsite on which Jones worked.  Id. ¶ 44.  Jones reported this to union representative W. P.,[2] but Local 798 took no meaningful action to investigate this event or hold anyone accountable.  Id. ¶ 44.  In 2019, journeyman welder C. N. taunted Jones with racial slurs and told him the union makes things tough on blacks.  Id. ¶ 45.  In 2019, a welder helper A. G. used racial epithets while around Jones.  Id. ¶ 47.  Jones raised this behavior with the steward, but the steward took no action.  Id.  White workers used racial epithets loosely and comfortably on the job site without consequence.  Id. ¶ 48.  Journeyman spacer C. S. habitually made black jokes of which the steward was aware and yet took no action.  Id. ¶ 49.  No steward at any job site on which Jones worked ever imposed consequences on a white employee for racial bigotry.  Id. ¶ 51.

---

[2] Jones identifies a number of individuals by name in his complaint. At this stage in the litigation the Court references these individuals using their initials.

4:20-cv-00585-CRK-CDL

In March 2017, Jones decided he would try to become a journeyman welder. Id. ¶ 53. However, when Jones attempted to obtain the requisite five letters of recommendation, he received no response to his requests. Id. ¶¶ 54, 58. After Local 798's Financial Secretary-Treasurer W. P. recommended that Jones attempt to become a journeyman spacer, foremen denied Jones the work needed to complete the required 500 qualifying hours. Id. ¶¶ 62–64. Instead, foremen gave Jones and the few other black workers less-desirable jobs, including janitorial duties, picking up metal shavings, and pre-heating welds. Id. ¶ 65.

In July 2018, Jones expressed his frustrations concerning his advancement by emailing a business agent of the union, C. Y. Id. ¶ 66. In October 2019, Jones executed a charge against Local 798 with the EEOC, alleging Title VII racial discrimination. Id. ¶ 72. Under the heading "Personal Harm," his charge stated: "I was subjected to racially hostile and discriminatory work environment." EEOC Charge at 3, Aug. 6, 2021, ECF No. 37-1. Jones then specified the basis of his charge as follows:

> Beginning in May 2019, I experienced a hostile and discriminatory work environment due to my race. [C. N.], a welder, has used racial slurs and taunted me, and stated that the Union used to not allow blacks as members. And on August 8, 2019, he stated that he no longer wanted to work with me. Also, a welder helper, [A. G.] used [a racial epithet] with no consequence even after I brought it to the attention of the Job Steward [M. G.]. His response was "we are not going to have that." However, there have been no consequences for Members of Local 798 who have made racially charged verbal attacks.

Id. The EEOC mailed a Suit Rights letter on August 17, 2020. Compl. ¶ 73.

4:20-cv-00585-CRK-CDL

On November 16, 2020, Jones filed a class action race discrimination suit under 42 U.S.C. § 1981 against Local 798 in the United States District Court for the Northern District of Oklahoma.  See ECF No. 2.  On April 23, 2021, Local 798 filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), alleging that Jones' complaint failed to state a claim upon which relief can be granted.  See ECF No. 15.  On May 14, 2021, Jones filed an amended complaint, adding three additional claims.  See ECF No. 16.[3]  In response to Jones' amended complaint, Local 798 refiled its motion to dismiss on June 21, 2021, and this motion is currently before the Court.  See Def.'s Mot. & Br. Sup. Mot. Dismiss, June 21, 2021, ECF No. 26 ("Def.'s Br.").

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, and reviews Defendant's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[4]  "The court's function on a Rule 12(b)(6) motion is . . . to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted."  Broker's Choice of Am., Inc. v. NBC Universal, Inc.,

---

[3] Jones filed a corrected amended complaint on May 18, 2021.  See ECF Nos. 17–19.
[4] The Court need not, and does not, convert Local 798's motion under Rule 12(b)(6) into a motion for summary judgment under Rule 56.  Generally, when a party presents matters outside of the pleadings, the Court must either exclude the material or treat the motion as one for summary judgment.  Alexander v. Oklahoma, 382 F.3d 1206, 1214 (10th Cir. 2004).  However, the Court may consider materials which are central to the plaintiff's claim when the parties do not dispute their authenticity. GFF Corp. v. Assoc'd Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). Here, both parties submit exhibits together with their briefs, these materials are referenced in the complaint, and with one exception, their authenticity is not disputed.  Contra Decl. of D. H., June 21, 2021, ECF No. 26-3.   Accordingly, the Court takes notice of the undisputed exhibits, and proceeds under Rule 12(b)(6).

5

4:20-cv-00585-CRK-CDL

757 F.3d 1125, 1135–36 (10th Cir. 2014) (internal citations omitted).  A complaint is legally sufficient if it contains factual allegations such that it states a plausible claim for relief on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain detailed factual allegations, it nevertheless requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Id. at 555 (internal citation omitted).

A claim is facially plausible when the plaintiff pleads factual content allowing the court to draw reasonable inferences that the defendant is liable for the alleged misconduct.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The Court must accept all well-pleaded factual allegations of the complaint as true and must construe the allegations in the light most favorable to the plaintiff.  Twombly, 550 U.S. at 555–56. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  When deciding a motion to dismiss, the Court considers the complaint in its entirety, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (internal citation omitted).

## DISCUSSION

Jones alleges four causes of action against Local 798: (1) failure to enforce the CBA under 42 U.S.C. § 1981, (2) imposing discriminatory advancement requirements under 42 U.S.C. § 1981, (3) failure to enforce the CBA under Title VII, and (4) imposing discriminatory advancement requirements under Title VII.  For the reasons

6

4:20-cv-00585-CRK-CDL

that follow, Jones fails to state a claim against Local 798 under which relief can be granted.

## I.   Claims under 42 U.S.C. § 1981

Jones claims that Local 798 discriminated against him by intentionally failing to enforce the anti-discrimination provisions of the CBA, and intentionally imposing advancement requirements which it knew blacks would not be able to meet.  Compl. ¶¶ 90–114.  Defendant responds Jones fails to plead intentional discrimination, as required under § 1981.  Def.'s Br. at 23–25.  Defendant also argues that Jones' failure to enforce claim must be dismissed because Jones fails to allege that he sought enforcement of the CBA.  Def.'s Br. at 25–27.  For the reasons that follow, Jones fails to plead sufficient factual content to support a claim against Local 798 under § 1981.

### A.   Failure to Enforce the CBA

Jones alleges that (1) he has been subject to racial discrimination on Local 798 job sites, (2) Local 798 has been aware of the discrimination, (3) and Local 798 has intentionally failed to file grievances, or otherwise enforce the CBA because of his race in violation of 42 U.S.C. § 1981.  Jones has adequately pled membership in a protected class; however, his claim that Local 798 intentionally choose not to protect his rights under the CBA because he is black is not supported by sufficient factual allegations to withstand a motion to dismiss.

Section 1981(a) guarantees all persons the same right "to make and enforce contracts" and "to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  To prevail on the merits of a § 1981

7

4:20-cv-00585-CRK-CDL

discrimination claim, a plaintiff must demonstrate membership in a protected class, and show a defendant intentionally discriminated on the basis of race.  Cruz v. Farmers Ins. Exch., 42 F.4th 1205, 1210 (10th Cir. 2022) (citing Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1101–02 (10th Cir. 2001)).[5]  It is well-established that a union must act to prevent employer discrimination against its members in certain circumstances.  Patterson v. McLean Credit Union, 491 U.S. 164, 177 (1989) (unions are obligated to represent members in disputes "that run from the employer to the employee").  Where an employee has filed a grievance with the union, the union's failure to pursue that grievance because of race violates § 1981 and Title VII. See, e.g., Goodman v. Lukens Steel Co., 482 U.S. 656, 669 (1987) (union was liable under § 1981 when it refused to "file proffered grievances").

Intentional discrimination requires motive.  A Plaintiff must allege the defendant interfered with the plaintiff's contractual rights because of a plaintiff's protected trait.  E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 773 (2015); see also Ricci v. DeStefano, 557 U.S. 557, 577 (2009).  A plaintiff can allege intent by identifying either direct evidence or circumstantial evidence.  See Kendrick

---

[5] The protection afforded under 42 U.S.C. § 1981 extends to the employment relationship.  Johnson v. Ry. Express Agency, Inc., 421 U.S. 454 (1975); Hampton v. Bakery Confectionary, Inc., 2022 WL 4361782, *12–*13 (10th Cir. 2021) (plaintiff needed to show union's interference with plaintiff-employer contract during grievance procedure).  Thus, a union may be found liable for intentionally refusing to pursue employee grievances.  See Goodman v. Lukens Steel Co., 482 U.S. 656, 669 (1987) (holding union liable when it "intentionally avoid[ed] asserting claims" of discrimination against its members); see also Patterson v. McLean Credit Union, 491 U.S. 164, at 177 (1989) (workplace harassment claim not cognizable under § 1981 without contractual impairment).

4:20-cv-00585-CRK-CDL

v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).[6]

Whether using direct or circumstantial evidence of intent, a plaintiff must point to specific facts to support his claim. Thus, in Cruz, 42 F.4th at 1210, the Court of Appeals relied upon a supervisor's comment that a Hispanic employee was terminated because employer did not want "some crazy brown man running around with a gun" as direct evidence of discrimination. Conversely, in Perry v. Woodward, 199 F.3d 1126, 1134 (10th Cir. 1999), the Court of Appeals found evidence of a supervisor's generally disparaging comments about minorities and advocacy of a discriminatory hiring policy were insufficient to support an inference of intent with respect to a terminated employee. Plaintiff may also allege indirect evidence to support an inference of discrimination. Compare Bekkem v. Wilkie, 915 F.3d 1258, 1267 (10th Cir. 2019) (plaintiff supported claim of pay discrimination by alleging supervisor failed to recommend review or increase of her salary) with Hampton v. Bakery Confectionary, Inc., 2022 WL 4361782, *8–*9 (10th Cir. 2021) (conclusory

---

[6] The McDonnell Douglas standard is "an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002). "The standards for employment discrimination set forth in McDonnell Douglas simply do not 'apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.'" Morman v. Campbell Cnty. Mem'l Hosp., 632 F. App'x 927, 933 (10th Cir. 2015) (quoting Swierkiewicz, 534 U.S. at 511). Nonetheless, "Twombly and Iqbal require that a plaintiff allege a plausible claim" and the Court evaluates "plausibility only by considering the prima facie case of discrimination" a plaintiff would need to prove in court. Id. The plaintiff "must allege facts that make such a claim at least plausible." Id.

4:20-cv-00585-CRK-CDL

allegations that union failed to pursue employee's rights because of race insufficient withstand a motion to dismiss).

General allegations without factual content are insufficient to survive a motion to dismiss.  See Khalik v. United Air Lines, 671 F.3d 1188, 1193 (10th Cir. 2012).  In Khalik, a former employee claimed discrimination in connection with her termination and retaliation under Title VII.  Id. at 1189.  Plaintiff alleged that she was Arab-American, Muslim and that "she was targeted because of her race, religion, national origin and ethnic heritage."  Id. at 1190.  She alleged that she had been employed for a period of years, she performed her job well at all times, she had attained a job title of Business Services Representative, that she had been grabbed by the arm "after being subjected to a false investigation and false criticism of her work."  Id.  She further alleged the "reasons given for [her] termination and other mistreatment . . . were false, giving rise to a presumption of discrimination, retaliation and wrongful termination."  Id.  The Court of Appeals affirmed the district court's dismissal in accordance with Iqbal, explaining "[w]hile 'specific facts are not necessary' some facts are."  Id. at 1193.  Accordingly, the Court of Appeals identified and struck allegations that were conclusory, leaving the complaint without any facts to demonstrate discrimination or retaliation.  Id. at 1193–94. Missing from plaintiff's allegations were facts necessary to demonstrate plausibility:

> While we do not mandate the pleading of any specific facts in particular, there are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement. For instance, Plaintiff should know when she requested FMLA leave and for what purpose. She should know who she requested leave from and who denied her. She should know generally when she complained about not receiving leave

4:20-cv-00585-CRK-CDL

> and when she was terminated. She should know details about how
> Defendant treated her compared to other non-Arabic or non-Muslim
> employees. She should know the reasons Defendant gave her for
> termination and why in her belief those reasons were pretextual. She
> should know who grabbed her by the arm, what the context for that
> action was, and when it occurred. She should know why she believed
> that action was connected with discriminatory animus. She should know
> who she complained to about the discrimination, when she complained,
> and what the response was. She should know who criticized her work,
> what that criticism was, and how she responded. But in fact, Plaintiff
> offers none of this detail. To be sure, we are not suggesting a court
> necessarily require each of the above facts. But a plaintiff must include
> some further detail for a claim to be plausible. Plaintiff's claims are
> based solely on the fact that she is Muslim and Arab–American, that she
> complained about discrimination, that she complained about the denial
> of FMLA leave, and that Defendant terminated her. Without more, her
> claims are not plausible under the Twombly/Iqbal standard.

Id. at 1194. See also, e.g., Grays v. Kittredge Co. Partners, LLC, 2021 WL 1300601,

*3 (D. Colo. Feb. 17, 2021) (section 1981 claim against property manager dismissed

when intent was only supported by statistics and bald assertions of racism); Jemaneh

v. Univ. of Wyoming, 82 F. Supp. 3d 1281, 1302–04 (D. Colo.), aff'd, 622 F. App'x 765

(10th Cir. 2015) (discrimination claim against university dismissed when plaintiff

only alleged 2–3 similarly-situated white classmates received passing grades while

he did not); Aliyev v. Fedex Ground Package Sys., Inc., 2014 WL 1338583, *6 (D. Utah

Apr. 3, 2014) (plaintiff who alleged that company summarily fired him after three-

week delay did not provide factual content leading to inference that termination was

motivated by animus).

Here, although Jones pleads membership of a protected class, Compl. ¶¶ 1, 39,

91, 102, 116, 128, he does not adequately allege that Local 798 intentionally failed to

enforce the CBA, and therefore his complaint must be dismissed.  At this stage, the

11

4:20-cv-00585-CRK-CDL

Court must accept all well-pleaded facts as true, and view them in the light most favorable to plaintiff. Brooks v. Mentor Worldwide LLC, 985 F.3d 1272, 1281 (10th Cir. 2021). However, like other claims challenged under R. 12(b)(6), "general assertions of discrimination" without supporting details are insufficient, and the Court "disregard[s] conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Khalik, 671 F.3d at 1193.

Here, Jones provides "a list of examples of racist conduct occurring on job sites worked by Local 798 union members, of which the union steward or representative was aware or should have been aware yet did nothing to address or otherwise act to enforce the collective bargaining agreement." Compl. ¶¶ 22, 42–51. Jones alleges that he reported racist conduct or that the stewards were otherwise aware of the conduct. Id. ¶¶ 42–51. Jones states in a conclusory manner that "[p]laintiff's race . . . is the reason Local 798's Union Stewards' [sic] fail to enforce the terms of the collective bargaining agreement." Id. ¶ 94. He alleges that Local 798 "fail[ed] to enforce the terms of the collective bargaining agreement," specifically referring to the anti-discrimination provision of the agreement, which states: "Employer and Union agree that neither of them shall take any action or refuse to take any action which shall discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race." Id. ¶¶ 6, 23; Def.'s Br., Ex. 1, June 21, 2022, ECF No. 26-1 at 4 (National Pipeline Agreement).

12

4:20-cv-00585-CRK-CDL

Stripping out Jones' conclusory language, all that is left is an assertion that the union has a history of racism, and that its stewards did not act on Jones' complaints. Taking these allegations as true, they do not add up to a plausible claim that Local 798 intentionally discriminated against Jones based on his race. Absent more of a complete description of the circumstances of these allegations, the Court cannot infer that Local 798's failure to pursue Jones' grievance under the CBA stemmed from an intent to discriminate. See Hampton, 2022 WL 4361782 at *7–*8 (dismissing plaintiff's § 1981 claim that the union discriminated against him because of his race by failing to reasonably advise him because he failed to plead facts from which the court could infer that the union was motivated by animus). See also York v. American Tel. & Tel. Co., 95 F.3d 948, 956–57 (10th Cir.1996) (holding in a Title VII claim that "a union cannot acquiesce in a company's prohibited employment discrimination . . . . However, mere inaction does not constitute acquiescence.")

**B.     Unfair Advancement Requirements**

Jones argues that Local 798 intentionally instituted requirements to prevent non-white helpers from advancing to journeymen, and that the union suspends these rules to allow white helpers to advance, in violation of 42 U.S.C. § 1981.[7]   Defendant

---

[7] Specifically, Jones refers to the 5,000 hours over 3 years in covered employment, 5 letters of recommendation from welders or journeyman, certification tests, fees, and application to the Local 798 Training Center Downhill Welding School required for advancement to Journeyman Welder.  Compl. ¶ 30.  He also complains about the requirements to advance to Journeyman Spacer, which include 3,000 Helper hours over 10 years, 5 letters of recommendation from Journeyman, 500 Journeyman hours in a "pipe gang" over 2 years, and approval from Local 798 for a change in classification, among other requirements.  Compl. ¶ 31.

4:20-cv-00585-CRK-CDL

argues that it took no purposeful actions against Jones to prevent him from advancing. Def.'s Br. at 23. On the contrary, Defendant asserts that Local 798 gave Jones support and encouragement in his quest to advance, and that it is not responsible for Jones' failure to obtain the requisite work hours or letters of recommendation, over which it has no control. Id. at 23–24.

As previously stated, § 1981 guarantees an equal right to make and enforce contracts. 42 U.S.C. § 1981(a). To prevail on a § 1981 discrimination claim, a plaintiff must show (1) membership in a protected class, (2) intent to discriminate on the basis of race, and (3) the interference with a protected contractual right. Cruz, 42 F.4th at 1210 (citing Hampton, 247 F.3d at 1101–02).

Here too, Jones pleads no facts which support his claim that the Local 798 intentionally imposes requirements to bar minorities from advancing to journeyman, that those requirements are not applied to whites, or that those requirements interfered with Jones' employment relationship. The Local 798 Handbook requires completing a certain number of work hours, obtaining letters of recommendation from fellow members, and applying to the local welding school to pass a practical test. Def.'s Br., Ex. 2, Apr. 23, 2021, ECF No. 15-2 (Local 798 Handbook) at 37. Jones alleges that these requirements are intentionally discriminatory. Compl. ¶ 101. Specifically, Jones pleads the following with respect to Local 798's advancement requirements:

> Indeed, Local 798 has imposed job advancement requirements that it knows minority union members will not be able to meet and further does not hold white union members to those same standards prior to advancing them up the ranks.

14

4:20-cv-00585-CRK-CDL

Compl. ¶ 25.

> In addition to intentionally imposing advancement requirements that
> minority union members would find exceedingly difficult to meet, Local
> 798 loosens these requirements for white union members, further
> helping the "cream" rise to the top.

Compl. ¶ 35.

> White union members with less experience and seniority than
> minorities union members, or even no seniority, can join Defendant
> Local 798 and promptly become Journeymen.

Compl. ¶ 36.

> Moreover, to Mr. Jones' frustration, the advancement requirements are
> disparately applied to white union workers. As expressed in Mr. Jones
> 2018 email to Local 798's Business Agent Charles Yates, Mr. Jones has
> witnessed white workers with less knowledge and experience advance
> to the role of Journeyman without having to meet the same
> requirements he has been held to.

Compl. ¶ 70.

Finally he alleges: "[w]ith full knowledge of its racist history and racist members,

Local 798 included advancement requirements that it knew would generally be

unobtainable for black union members."[8]  Compl. ¶ 101.  Each of these statements

alleges conclusions unsupported by factual content—in particular, factual content

which could support an inference of intent as required by § 1981.

Determining whether a complaint states a plausible claim "requires the

reviewing court to draw on its judicial experience and common sense."  Iqbal, 556

---

[8] Defendant argues that to the extent that Jones is arguing a disparate impact claim,
such a claim cannot be made under § 1981.  Def.'s Reply at 2–3 (citing Drake v. City
of Fort Collins, 927 F.2d 1156, 1162 (10th Cir. 1991)).  The Court understands Jones'
claim as asserting that uneven treatment based upon race supports the inference of
an intent to discriminate.

4:20-cv-00585-CRK-CDL

U.S. at 679.   Common sense dictates that Jones give the facts surrounding the examples of which he is aware.   Without more factual content the Court cannot say that Jones has stated a plausible claim.   There may be facts that would support this conclusion, but unless Jones alleges them, his complaint cannot withstand a motion to dismiss.   See Khalik, 671 F.3d at 1194   (plaintiff should have identified specific people, acts, timing, and reasons to overcome motion to dismiss a discrimination claim); see also Grays, 2021 WL 1300601 at *3; Jemaneh, 82 F. Supp. 3d at 1302–04; Aliyev, 2014 WL 1338583 at *6.   Plaintiff must provide facts about the actions of union representatives in specific instances, such that it would be possible to infer that Local 798 intended to discriminate.

## II.    Claims under Title VII

Jones argues that Local 798 violated Title VII by failing to enforce the CBA, and by imposing and suspending promotion requirements so that only white members can advance to journeyman.   Compl. ¶¶ 26–29.   Defendant responds that Jones has brought a duty to represent claim under the National Labor relations Act, 29 U.S.C. § 158(b) which is time barred.[9]   Def.'s Br. at 30. Further, Defendant argues that Jones

---

[9] Defendant's argument is misplaced.   Both the NRLA and Title VII allow for claims for breach of a duty of representation.   Indeed, the duty of fair representation under the NRLA and Title VII overlap. See e.g., Agosto v. Corr. Officers Benev. Ass'n, 107 F. Supp. 2d 294, 304 (S.D.N.Y. 2000) (collecting cases).   The Tenth Circuit includes a breach of the duty of representation as an element of a Title VII claim against a union. Cummings v. Am. Postal Workers Union, Loc. 7, AFL-CIO, 2021 WL 864763, at *2 (E.D. Okla. Mar. 8, 2021), aff'd sub nom. Cummings v. Am. Postal Worker's Union, Loc. 7, AFL-CIO, 2022 WL 2188008 (10th Cir. June 17, 2022). See also Wells v. Chrysler Group LLC, 559 Fed. App'x. 512, 514–15 (6th Cir. 2014).   Nonetheless the cause of action under Title VII is distinct from that available under the NRLA.

16

4:20-cv-00585-CRK-CDL

fails to plead that the union's conduct towards him was arbitrary, discriminatory or in bad faith.  Def.'s Reply to Pl.'s Resp., 4–6 Aug. 27, 2021, ECF No. 38 ("Def.'s Reply"). Defendant also argues Jones has failed to exhaust administrative remedies with respect to his advancement claim, and in any event this claim is time-barred.[10]

### A.    Failure to Enforce the CBA

Jones claims that Local 798 has refused to enforce the CBA because he is black, specifically by failing to file grievances in response to his complaints of bigotry, and that this failure has had a disparate impact on minorities.   Pl.'s Br. at 16–18. Defendant counters that Jones fails to allege that he filed a grievance and thus he cannot allege the breach of the duty for fair representation necessary to sustain a Title VII claim.   Def.'s Br. at 26–27; Def's Reply at 1, 4, 6.   Jones' allegations are insufficient to survive Defendant's motion to dismiss.

Under Title VII:

> It shall be an unlawful employment practice for a labor organization--
> (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;
> (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

---

[10] Defendant argues that Jones' claim for discriminatory job advancement under Title VII is untimely because Jones allegedly gave up trying to advance to journeyman welder sometime before July 2017.  Def.'s Br. at 30.  Jones contends that his claims are timely.  Pl.'s Br. at 26.  Because Jones' Title VII claims are dismissed, the Court need not and does not reach this issue.

4:20-cv-00585-CRK-CDL

> (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000e-2.  Thus, a union may be held liable if it breaches its duty of representation because of race.  See Cummings, 2021 WL 864763 at *2.  Title VII recognizes two types of claims: disparate treatment and disparate impact.  As the Court of Appeals explained in Carpenter v. Boeing Co., 456 F.3d 1183, 1187 (10th Cir. 2006):

> "Disparate treatment" . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment.
>
> Claims of disparate treatment may be distinguished from claims that stress "disparate impact." The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.

(quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977)).  For a disparate treatment claim plaintiff must allege intent, i.e., that defendant treated a plaintiff differently because of a plaintiff's protected trait.  Abercrombie & Fitch, 575 U.S. at 773; see also Ricci, 557 U.S. at 577.  On a motion to dismiss under Rule 12(b)(6), plaintiff's burden is not to establish a prima facie case of discrimination, but only to set forth plausible fact-based claims.  Khalik, 671 F.3d at 1193.

4:20-cv-00585-CRK-CDL

For a disparate impact claim the plaintiff need not plead intent, only that the treatment resulted in disparities between the protected class and the unprotected class.  <u>Santana v. City of Denver</u>, 488 F.3d 860, 866 (10th Cir. 2007).  A plaintiff must demonstrate that a defendant "uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin."   42 U.S.C. § 2000e–2(k)(1)(A)(i).   A plaintiff must allege that "a specific identifiable employment practice or policy caused a significant disparate impact on a protected group."  <u>See</u> <u>Carpenter</u>, 456 F.3d at 1193 (discussing elements needed to succeed on the merits).[11]   The plaintiff must identify a device or employment practice being challenged.  <u>Compare</u> <u>Griggs v. Duke Power Co.</u>, 401 U.S. 424, 433 (1974) (requiring employees to have a high school diploma) <u>with</u> <u>Wards Cove Packing v. Antonio</u>, 490 U.S. 642, 657 (1989) (failing to identify a device being challenged); <u>see also</u> 42 U.S.C. § 2000e-2(k)(1)(A)(i), (B)(i).

At the motion to dismiss stage "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact."  <u>Smith v. City of Jackson, Miss.</u>, 544 U.S. 228, 241 (2005).  A plaintiff must identify an employment practice responsible for "observed statistical disparities."  <u>Id.</u> As with other claims, the court disregards conclusory statements asserting a discrimination claim, and considers only whether the remaining, factual allegations plausibly suggest liability.  <u>See</u> <u>id.</u>; <u>Iqbal</u>, 556 U.S. at 680–81.  If the pleaded facts

---

[11] The burden then shifts to the defendant to show a business-related reason for its practice.  <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802.

4:20-cv-00585-CRK-CDL

show no more than the "mere possibility of misconduct," the complaint must be dismissed. Iqbal, 556 U.S. at 679.

Here, Jones alleges:

78. Defendant Local 798's conduct, even if facially neutral or unintentionally discriminatory, has had a disparate impact upon Plaintiff and the putative class members, by denying members of a protected class (based on race and national origin) equal opportunities for advancement and protection under the Collective Bargaining Agreement, in violation of Title VII.

116. Plaintiff is Black.

117. While working on job sites governed by Local 798's collective bargaining agreements, Plaintiff, and other members similarly situated to him, has been subjected to severe, pervasive, and objectively racist conduct.

118. Local 798's Union Stewards on these job sites knew or should have known of the racist conduct affecting Plaintiff, and other members similarly situated to him.

119. Nonetheless, Local 798's Union Stewards consistently failed to enforce the terms of the collective bargaining agreements to stem this racist conduct.

120. Local 798's failure to enforce the anti-discrimination clause of the Collective Bargaining Agreement disparately **impacted Plaintiff** and members of a protected class based on race.

121. As a direct and proximate result of Defendant Local 798's conduct and failure to enforce, Plaintiff, and other members similarly situated to him, has suffered through untenable racist conduct on job-sites governed by the collective bargaining agreement and denied the benefits of that Agreement.

122. As a direct and proximate result of Defendant Local 798's conduct and failure to enforce, Plaintiff, and other members similarly situated to him, has suffered economic and non-economic injuries including pain, suffering, and emotional distress.

4:20-cv-00585-CRK-CDL

123. As a direct and proximate result of Defendant Local 798's conduct and failure to enforce, Plaintiff, and other members similarly situated to him, is entitled to all available damages pursuant to 42 USC § 2000e.

124. Defendant Local 798's actions were willful, wanton, malicious, and in gross disregard of Plaintiff's, and other members similarly situated to him, rights entitling Plaintiff and the putative class members to punitive damages.

Compl. ¶¶ 78, 116–124 (emphasis in the original).

Jones fails to plead that the Local 798 treated him differently because of his race or intended to do so.  Jones offers no facts from which the Court could infer that Local 798 failed to pursue rights under the CBA because Jones is black.[12]  Jones alleges that he has been subject to racial discrimination on Local 798 job sites, that Local 798 is aware of the discrimination, and that Local 798 has intentionally failed to enforce the CBA because he is black, in violation of Title VII.  Compl. ¶¶ 116–20.  The allegations identify discriminatory acts by individuals other than Local 798 of which the union was aware, and are actionable under the CBA.  But Jones does not

---

[12] Local 798 argues repeatedly that Jones cannot bring his claim without having first filed a grievance.  Whether inaction on behalf of the union in the absence of a filed grievance could ever lead to a plausible claim is a matter of debate.  The Seventh Circuit addressed this debate in E.E.O.C. v. Pipefitters Ass'n Loc. Union 597, 334 F.3d 656, 660 (7th Cir. 2003) (concluding that "inaction, unless invidious, is not discrimination in any accepted sense of the term.")  See also Thorn v. Amalgamated Transit Union, 305 F.3d 826, 832–33 (8th Cir.2002).  But see Woods v. Graphic Communications, 925 F.2d 1195, 1201 (9th Cir.1991); Howard v. International Molders & Allied Workers Union, 779 F.2d 1546, 1553 (11th Cir.1986).  The Court need not address whether Jones' failure to file a grievance with Local 798 precludes his ability to state a claim under Title VII because Jones has not pled facts sufficient to state a claim under either theory, regardless of whether he was required to file a grievance.

4:20-cv-00585-CRK-CDL

allege that these are the acts of Local 798 for the purposes of disparate treatment under Title VII.

Rather, Jones claims that the Local 798's disparate treatment stems from its failure to enforce his rights under the CBA to protect him from these acts. Compl. ¶¶ 120–123. His claim is that the union should have pressed his rights under the CBA. The failure of a union to press grievances can give rise to a breach of a duty of fair representation claim. Cummings, 2021 WL 864763 at *3–*5; York, 95 F.3d at 956–57. However, Jones fails to allege facts from which the court could infer that "there was some indication that the union's actions were motivated by discriminatory animus." Cummings, 2021 WL 864763, *3–*5, citing York, 95 F.3d at 957.

Construing his claim liberally, it is possible that Jones is claiming that Local 798 failed to pursue his rights under the CBA, while pursuing the rights of other workers under the CBA. However, again Jones has failed to provide the Court with the requisite factual content. He alleges no facts from which the Court can infer intent and he alleges no facts that Local 798 pursued the claims of other workers while ignoring his claims.

Likewise, Jones offers no facts to support a claim of disparate impact. Although he pleads that he is a member of a protected class, Compl. ¶ 116, he fails to identify a specific practice or device employed by the union which causes a disparate impact. Jones pleads that union stewards did not act on his claims, Compl. ¶ 119, but he does not plead that Local 798 had a practice or policy of not pursuing the rights of minorities under the CBA. Jones also does not plead facts from which one could

22

4:20-cv-00585-CRK-CDL

infer that the failure to press claims under the CBA has led to a disparate impact. Jones concludes that the Local 798's failure to enforce his rights has had a disparate impact, Compl. ¶¶ 117, 120, but he alleges no facts in support of that conclusion.

## B.    Unfair Advancement Requirements

Jones claims that Local 798 has instituted requirements to prevent non-white helpers from advancing to journeymen, that Local 798 suspends these rules to allow white helpers to advance, and that these policies violate Title VII.  Compl. ¶¶ 126–40.  Local 798 argues that the Court cannot consider Jones' advancement claim because, under Title VII, Jones failed to exhaust administrative remedies by filing a charge with the EEOC.  Def.'s Br. at 29.  Specifically, Local 798 argues Jones only alleged hostile workplace to the EEOC, but not discrimination in advancement.  Id. Because Jones did not file an EEOC charge with respect to his advancement claim, this claim is dismissed.

It is well-settled that a plaintiff must exhaust administrative remedies by filing a charge with the EEOC before bringing suit under Title VII.  See, e.g., Aramburu v. Boeing Co., 112 F.3d 1398, 1409–10 (10th Cir. 1997) (dismissed uncharged hostile work environment suit because conduct underlying that suit differed from conduct underlying the charge of wrongful discharge).  Unless a plaintiff files an EEOC charge prior to filing a civil action, pursuant to 42 U.S.C. § 2000e-5(f)(1), federal courts lack jurisdiction over Title VII claims.  Seymour v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  Moreover, each discriminatory

23

4:20-cv-00585-CRK-CDL

action is considered a separate unlawful practice for which administrative remedies must be exhausted.   Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003).   In Martinez, the court explained that for the purposes of EEOC exhaustion "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"   Id. (quoting Morgan, 536 U.S. at 114) (postal employee failed to exhaust retaliation-through-termination claim when EEOC charge only contained retaliation claims leading up to termination).

Here, Jones filed an intake form with the EEOC on December 30, 2019.   EEOC Charge at 2, Aug. 6, 2021, ECF No. 37-1.   On the form, Jones claims he was "subjected to a racially hostile and discriminatory work environment," and lists two instances when union members used racial epithets in his presence.   Id. at 3.   This situation is comparable to that of the plaintiff in Duncan v. Manager, Dep't of Safety, City & Cty. of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005), whose retaliation claim was dismissed when he only charged hostile work environment in EEOC complaint.   Jones did not charge that Local 798 discriminated against him when he sought advancement to journeyman, or assert that these claims are the same.   See Semsroth v. City of Wichita, 304 F. App'x 707, 718 (10th Cir. 2008) (claims which were only "reasonably related" to EEOC charge dismissed).   This omission is fatal to Jones' claim.   Jones' allegations of a hostile work environment on the EEOC form does not exhaust administrative remedies for his discrimination in advancement claim.   See, e.g.,

4:20-cv-00585-CRK-CDL

<u>Annett v. Univ. of Kan.</u>, 371 F.3d 1233, 1238 (10th Cir. 2004) (retaliation claim not exhausted when plaintiff failed to charge prerequisite adverse employment action).

Jones argues that the Court should consider administrative remedies exhausted for all of his claims, citing <u>Jones v. U.P.S., Inc.</u>, 502 F.3d 1176, 1186 (2007), for the proposition that the Court should construe EEOC charges liberally.  Pl.'s Br. at 21.  But the facts of <u>Jones</u> are distinguishable, as in that case the plaintiff alleged all the facts required to show discrimination on the basis of disability—he simply failed to check the correct box on the EEOC form.  <u>Jones</u>, 502 F.3d at 1186–87.  Here, Jones does not state any facts on his EEOC form which suggest discrimination in advancement; he gives two examples of workplace harassment, and states that the union failed to act on these incidents.  EEOC Charge at 3.  Thus, he has failed to exhaust administrative remedies for his discrimination in advancement claim under Title VII.[13]

---

[13] Jones argues that Local 798 improperly challenges whether his proposed classes can sustain their claims on a motion to dismiss.  Pl.'s Br. at 14–15.  Pointing to the fact that he has not moved to certify the proposed classes under Fed. R. Civ. P. 23, Jones argues that any consideration of classes is premature, citing <u>Marso v. Safespeed</u>, 2020 WL 4464410, *15 (D. Kan. Aug. 4, 2020) ("Consideration of whether plaintiff's class action allegations are sufficient under Rule 23, Fed. R. Civ. P., is not appropriate at the motion to dismiss stage. . . . The Court will make such determination at the class certification phase").  Jones is correct in asserting that only his individual claims are considered at this stage.  <u>See</u> <u>Robey v. Shapiro, Marianos & Cejda, LLC</u>, 434 F.3d 1208, 1213 (10th Cir. 2006).  However, Local 798 only argues the Court should consider Jones' claims, noting the Tenth Circuit upheld dismissal of a class-action suit "when the named plaintiff failed to state a claim on his own behalf," Def.'s Reply at 9, and this issue is therefore not in contention.

4:20-cv-00585-CRK-CDL

## **CONCLUSION**

Jones first, second and third claims fail because he has not adequately plead intent; his fourth claim fails because he did not exhaust administrative remedies. Therefore, for the foregoing reasons, it is

**ORDERED** that Defendant's Motion to Dismiss is GRANTED; and it is further

**ORDERED** that Plaintiff's claims under 42 U.S.C. § 1981 are DISMISSED without prejudice pursuant to Fed. R. Civ. P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Title VII claims are DISMISSED without prejudice pursuant to Fed. R. Civ. P. 12(b)(6); and it is further

**ORDERED** that Plaintiff is granted leave to file an amended complaint within thirty days from the date of this order to cure the deficiencies of his Title VII and 42 U.S.C. § 1981 claims. Should Plaintiff fail to file a second amended complaint the court will issue a judgment dismissing Plaintiff's claims in accordance with this Order.

 /s/ Claire R. Kelly
Claire R. Kelly, Judge[*]

Dated:        December 5, 2022
              New York, New York

---

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

26