## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

<table>
<tr><td>

**RODNEY JONES, on behalf of himself
and all others similarly situated,**

     **Plaintiff,**

**v.**

**LOCAL 798 OF THE UNITED ASSOCIATION
OF JOURNEYMEN AND APPRENTICES OF
THE PLUMBING AND PIPEFITTING
INDUSTRY OF THE UNITED STATES AND
CANADA, AFL-CIO,**

     **Defendant.**

</td><td>

**4:20-cv-00585-CRK-CDL**

</td></tr>
</table>

## OPINION AND ORDER

Before the Court is a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). This is the second motion to dismiss filed by Defendant Local 798 of the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO ("Local 798"), which seeks to dismiss three racial-discrimination claims brought against it by Plaintiff Rodney Jones under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e ("Title VII"). See [Local 798's] Br. Supp. Mot. Dismiss at 14–16, Feb. 15, 2023, ECF No. 44 ("Def. Br."). This Court previously dismissed Jones' first amended complaint for failure to state a claim, and Local 798 now moves to dismiss Jones' second amended complaint. For the following reasons, Local 798's motion is granted, and Jones' claims are dismissed.

4:20-cv-00585-CRK-CDL

## BACKGROUND

The Court presumes familiarity with the facts of this case from this Court's previous opinion in Jones v. Local 798 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the United States & Can., 2022 WL 17417980 (N.D. Okla. Dec. 5, 2022), and now recounts only the facts relevant to the Court's review of Jones' second amended complaint.  In its prior opinion, the Court dismissed Jones' two claims under 42 U.S.C. § 1981 without prejudice, and also dismissed Jones' claim under Title VII for failure to enforce the National Pipeline Agreement ("CBA") without prejudice.  Id. at 29–30.  The Court dismissed Jones' claim for discrimination in advancement under Title VII without leave to amend, as this claim was not properly exhausted before the Equal Opportunity Employment Commission ("EEOC").  See id. at 29.  Jones' second amended complaint re-alleges his two claims under § 1981, as well as his failure to enforce claim under Title VII.[1] See Second Amended Class Action Complaint, Jan. 4, 2023, ECF No. 41 ("Second Am. Compl.").  The Court includes facts from Jones' second amended complaint and EEOC charge, which the Court assumes to be true for the purposes of this opinion and order.

---

[1] Jones argues in his brief that he has also pled sufficient facts to sustain a "hostile work environment" claim under both 42 U.S.C. § 1981 and § 2000e-2(a) of Title VII. See Corrected Pl.'s Resp. Opp. Def.'s Mot. Dismiss at 26–29, Apr. 11, 2023, ECF No. 50 ("Pl. Br.").   Section 2000e-2(a) applies to employers, and Local 798 is not Jones' employer.   Moreover, Jones does not make this claim in his second amended complaint, so the Court need not consider this argument.

2

4:20-cv-00585-CRK-CDL

Jones alleges the following new facts, which were not presented in his first amended complaint. Labor unions in general have a history of discrimination. Second Am. Compl. ¶¶ 11–19. In 1985, the Supreme Court of Alaska found that the 2.2 percent quota established by the Alaska State Commission for Human Rights for black union membership in Local 798 was unreasonable. Id. ¶¶27–38. In 2013, a Missouri member of Local 798 successfully sued Local 798 for violations of § 1981 and Title VII. Id. ¶¶ 39–52. In 2008, a Minnesota helper in Local 798 sued the Union for racial discrimination. Id. ¶¶ 53–60. All officers, business agents, dispatchers, and organizers for Local 798 have always been white. Id. ¶ 62. From 2006 to 2018, numerous black union members complained to union management about instances of discrimination on jobsites, and the managers took no action. Id. ¶ 75–78.

Further, fellow members known to Jones made discriminatory remarks about black people. Id. ¶¶ 84–87. Two named members who started with Local 798 at the same time as Jones in 2006 have since been promoted past him. Id. ¶ 88. One of these members is now a welder, and one is "not a Journeyman." Id. Nearly all white members who joined the Local 798 at the same time as Jones have been promoted past him. Id. ¶ 89. When Jones contacted a job foreman about working a specific job in 2010–2011, the foreman "in a very condescending manner" told Jones that he would need a clean background for the job. Id. ¶ 92. Jones has a Transportation Worker Identification Credential, which allows him to work jobs requiring higher clearance. Id. ¶¶ 93–94. A union bidding agent known to Jones was surprised that Jones had this credential. Id. ¶ 95.

3

4:20-cv-00585-CRK-CDL

Finally, in 2017 Jones wanted to learn to be a pipe inspector, and a union steward told Jones that he could become an inspector with proper training.  Id. ¶ 96. Jones took time off of work to receive the training, for which Local 798 did not pay. Id. ¶ 97.  When Jones finished training, the same steward told Jones that he would not be eligible to be an inspector, and would not be reimbursed for the cost of training. Id. ¶ 98.  Local 798 paid white members to go to the same training. [2]  Id. ¶ 100.

Jones also re-alleges the following pertinent facts, which were present in his first amended complaint.  In 2017, while working on a jobsite in Detroit, a co-worker commented to Jones about black people being lazy and taking handouts.  Id. ¶ 126. Jones voiced his disapproval of such comments and reported this event to Local 798's steward.  Id.  The steward said he would "take care of it," but did nothing.  Id.  In March 2017, Jones decided he would try to become a journeyman welder.  Id. ¶ 136. However, when Jones attempted to obtain the requisite five letters of recommendation, he received no response to his requests.  Id. ¶ 141.  In July 2018, Jones expressed his frustrations concerning his advancement by emailing a business agent of the union.  Id. ¶ 149.  In October 2019, Jones executed a charge against Local 798 with the EEOC, alleging Title VII racial discrimination.  Id. ¶ 72.  Under the heading "Personal Harm," his charge stated: "I was subjected to racially hostile and discriminatory work environment."  EEOC Charge at 3, Aug. 6, 2021, ECF No. 37-1.

---

[2] The preceding facts are in addition to the facts pled by Jones in his first amended complaint, which are re-alleged in his second amended complaint.

4:20-cv-00585-CRK-CDL

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, and reviews Defendant's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). A complaint is legally sufficient if it contains factual allegations such that it states a plausible claim for relief on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain detailed factual allegations, it nevertheless requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Id. at 555 (internal citation omitted). A claim is facially plausible when the plaintiff pleads factual content allowing the court to draw reasonable inferences that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court accepts all well-pleaded factual allegations of the complaint as true, and must construe the allegations in the light most favorable to the plaintiff. Twombly, 550 U.S. at 555–56. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## DISCUSSION

Jones alleges three causes of action against Local 798: (1) failure to enforce the CBA under 42 U.S.C. § 1981, (2) imposing discriminatory advancement requirements under 42 U.S.C. § 1981, and (3) failure to enforce the CBA under Title VII. For the reasons that follow, Jones fails to state a claim against Local 798 under which relief can be granted.

4:20-cv-00585-CRK-CDL

## I.     Failure to Enforce the CBA under 42 U.S.C. § 1981

Jones alleges that he has been subject to racial discrimination on Local 798 job sites, and that Local 798 has intentionally failed to enforce the terms of the CBA because Jones is black.  See Second Am. Compl. ¶¶ 175–184; see also Corrected Pl.'s Resp. Opp. Def.'s Mot. Dismiss at 24–26, Apr. 11, 2023, ECF No. 50 ("Pl. Br.").  Local 798 counters that Jones has not asserted any specific facts which plausibly suggest the union intended to discriminate, and in any case, Jones never filed a grievance upon which it could act.  See Def. Br. at 14–16; see also Reply to Pl.'s Resp. to [Local 798's] Mot. Dismiss at 5, Apr. 24, 2023, ECF No. 53 ("Def. Reply").  Because Jones again fails to plead sufficient facts to support his allegations, this claim is dismissed.

Section 1981(a) guarantees all persons the same right "to make and enforce contracts" and "to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).  To prevail under § 1981(a), a plaintiff must show intent to discriminate.  Cruz v. Farmers Ins. Exch., 42 F.4th 1205, 1210 (10th Cir. 2022). Intent to discriminate can be shown through direct or indirect evidence.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973).  Whether using direct or circumstantial evidence of intent, a plaintiff must point to specific facts to support his or her claim.  See, e.g., Cruz, 42 F.4th at 1210–11 (supervisor's comment that he didn't want "some crazy brown man running around with a gun" was specific fact suggesting discrimination).

On a motion to dismiss, a plaintiff must allege facts from which a court may reasonably infer defendant's liability.  Frey v. Town of Jackson, Wyoming, 41 F.4th

6

4:20-cv-00585-CRK-CDL

1223, 1232 (10th Cir. 2022).   Allegations which are "merely consistent with a defendant's liability" are insufficient.  Id.  Rather, a plaintiff must "nudge the claims across the line from conceivable or speculative to plausible."  Id. at 1233 "[L]abels, conclusions, formulaic recitations of elements, and naked assertions will not suffice." Id.  An allegation is conclusory "if it states an inference without underlying facts or if it lacks any factual enhancement," and conclusory allegations are not entitled to an assumption of truth.  Id.

Jones second amended complaint supplies additional background information concerning discrimination at Local 798 generally, but does not allege facts suggesting the union refused to enforce the CBA because of Jones' race.  Jones alleges that unions in general, and Local 798 specifically, have a history of discriminating against black members.  Second Am. Compl. ¶¶ 11–61.  Jones also describes specific instances in which black members were subject to bigotry by foremen and fellow members, and Local 798 failed to act.  Id. ¶¶ 75–78.  Although disturbing, these new accounts do not show that Local 798 intended to discriminate against Jones.  In his first amended complaint, Jones provided a list of specific instances of bigotry occurring on job sites worked by Local 798 union members, which Local 798 allegedly did not address.  First Am. Class Action Compl. ¶¶ 22, 42–51, May 18, 2021, ECF No. 19 ("First Am. Compl.").  Jones' second amended complaint significantly expands on this list of instances, detailing more historical instances of bigotry against black members of Local 798, and discrimination in unions generally.  Second Am. Compl. ¶¶ 11–61, 75– 78.  However numerous, these general allegations relating to other members are

7

4:20-cv-00585-CRK-CDL

insufficient to show that Local 798 intended to discriminate against Jones. See Khalik v. United Air Lines, 671 F.3d 1188, 1194 (10th Cir. 2012). In Khalik v. United Air Lines, the Court of Appeals discussed the facts a plaintiff must plead in order to survive a motion to dismiss a discrimination claim:

> While we do not mandate the pleading of any specific facts in particular, there are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement. For instance, Plaintiff should know when she requested FMLA leave and for what purpose. She should know who she requested leave from and who denied her. She should know generally when she complained about not receiving leave and when she was terminated. She should know details about how Defendant treated her compared to other non-Arabic or non-Muslim employees. She should know the reasons Defendant gave her for termination and why in her belief those reasons were pretextual. She should know who grabbed her by the arm, what the context for that action was, and when it occurred. She should know why she believed that action was connected with discriminatory animus. She should know who complained to about the discrimination, when she complained, and what the response was. She should know who criticized her work, what that criticism was, and how she responded. But in fact, Plaintiff offers none of this detail. To be sure, we are not suggesting a court necessarily require each of the above facts. But a plaintiff must include some further detail for a claim to be plausible. Plaintiff's claims are based solely on the fact that she is Muslim and Arab–American, that she complained about discrimination, that she complained about the denial of FMLA leave, and that Defendant terminated her. Without more, her claims are not plausible under the Twombly/Iqbal standard.

See Id.. at 1194. Jones argues that his new examples show a "pattern of practice and conduct" occurring at Local 798 job sites. Second Am. Compl. ¶ 75. Jones asks the Court to infer that Local 798 deliberately discriminated against Jones because it generally discriminates against black members. The Court cannot infer from this general assertion what Twombly requires Jones to plead, i.e., facts suggesting that Local 798 intended to discriminate against him, personally. See Twombly, 550 U.S.

8

4:20-cv-00585-CRK-CDL

at 570; see also Frey, 41 F.4th at 1232 (allegations lacking factual enhancement are conclusory); Hampton v. Bakery Confectionary, Inc., 2022 WL 4361782, *8–*9 (10th Cir. 2021) (conclusory allegations that union failed to pursue employee's rights because of race insufficient withstand a motion to dismiss); Perry v. Woodward, 199 F.3d 1126, 1134 (10th Cir. 1999) (general allegations of bigotry fail to show intent towards plaintiff).[3]   Therefore, Jones' additional background information does not move his claim "from conceivable or speculative to plausible."  Frey, 41 F.4th at 1233.

In his second amended complaint, Jones also provides additional allegations about his personal interactions with Local 798.  See Second Am. Compl. ¶¶ 79–100. Some of these allegations are conclusory, amounting to bare speculation about Local 798's policies and motivations.  See Second Am. Compl. ¶¶ 79–83, 89, 91.  For instance, Jones asserts that "[b]lack [m]embers have little to no chance of every [sic] successfully prosecuting a grievance because leadership will not allow it to happen and leadership must prosecute the grievance."  Id.. ¶ 81.  Jones also states that:

> Every time [he] complained about the conduct that he was subjected to he was at risk of losing his job, having someone use violence or force against him for challenging the discrimination, having his personal protective equipment altered or tampered with, and other such ramifications and leadership knew this and took no action to protect him and other black members or to stop the discrimination and harassment.

---

[3] The evidence introduced by Perry consists of isolated, disparaging comments made by Woodward to and about Hispanics . . . . Perry acknowledged during her deposition that none of the derogatory comments made by Woodward were directed toward her. . . . Perry has failed to demonstrate a causal nexus between Woodward's racist comments and her discharge.

Perry v. Woodward, 199 F.3d 1126, 1134 (10th Cir. 1999).

4:20-cv-00585-CRK-CDL

Id.. ¶ 82.  These statements lack underlying factual support, and are therefore not entitled to the assumption of truth.  See Frey, 41 F.4th at 1232; Khalik, 671 F.3d at 1193.  Separately, some of Jones' allegations are not conclusory, but do not support his claim that Local 798 failed to enforce the CBA.  Jones gives specific examples of how two white members of the union made derogatory remarks towards him based on race.  Second Am. Compl. ¶¶ 84–87.  However, Jones does not allege that either member was a union representative, that Local 798 controlled the conduct of the members, or indicate that he pursued a grievance over these incidents.  See Id..  Construing these additional examples broadly, Jones appears to be asserting that Local 798 should have taken action to prevent such instances of bigotry on its jobsites.  However, Jones fails to identify any authority supporting this proposition.  It is well-established that a union must act to prevent employer discrimination against its members in certain circumstances.  Patterson v. McLean Credit Union, 491 U.S. 164, 177 (1989).  Thus, where an employee has filed a grievance with the union, the union's failure to pursue that grievance because of race violates § 1981 and Title VII.  Goodman v. Lukens Steel Co., 482 U.S. 656, 669 (1987).  If Jones had filed a grievance based on either incident, and Local 798 failed to press Jones' grievances without adequate explanation, these incidents would push Jones' claim toward "plausible."  However, Jones does not allege that he filed a grievance, and Local 798 has no responsibility for the acts of individual members towards one another.  See Anspach v. Tomkins Indus., Inc., 817 F. Supp. 1499, 1514 (D. Kan. 1993), aff'd sub nom. Anspach v. Sheet Metal Workers' Int'l Ass'n Loc. No. 2, 51 F.3d 285 (10th Cir. 1995).

4:20-cv-00585-CRK-CDL

Therefore, construing Jones' new allegations in his favor, Local 798's failure to act under these circumstances does not give rise to an inference of intentional discrimination.

## II.    Failure to Advance under 42 U.S.C. § 1981

Jones alleges that Local 798 intentionally institutes requirements to prevent non-white helpers from advancing to journeymen in violation of 42 U.S.C. § 1981. Second Am. Compl. ¶¶ 185–204.  Local 798 argues that Jones has not pled any facts showing that it intentionally prevented Jones from advancing, and that the union was not responsible for Jones' failure to obtain the requisite work hours or letters of recommendation, over which it has no control.  Def. Br. at 16–18.  Because Jones again fails to plead sufficient facts to support his allegations, this claim is dismissed.

As previously stated, § 1981 guarantees an equal right to make and enforce contracts.  To prevail under § 1981(a), a plaintiff must show intent to discriminate by pointing to specific facts to support his or her claim.  Cruz, 42 F.4th at 1210 (10th Cir. 2022).  On a motion to dismiss, a plaintiff must allege sufficient facts to show that a claim is plausible, not merely speculative.  Frey, 41 F.4th at 1232.

In his second amended complaint, Jones provides additional details about his efforts to advance in Local 798.  As with his failure-to-enforce claim, some of Jones' allegations are simply conclusory.  See, e.g., Second Am. Compl. ¶¶ 89, 91, 100 ("This failure to assist Plaintiff was not about Plaintiff as an individual or the qualifty [sic] of Plaintiff's work but was because Plaintiff was a Black male and the Union does not support the advancement of Black men in the Union beyond Welder's Helper").  The

4:20-cv-00585-CRK-CDL

Court disregards these allegations.  Frey, 41 F.4th at 1233.  Leaving aside his conclusory statements, Jones does provide some specific information which he claims supports an inference of intent.  For example, Jones claims that "[i]n 2006 when Plaintiff started with the Union [D.W.] and [J.C.] were both helpers with the Union. Both have promoted up past Plaintiff. [D.W.] is not a Journeyman and [J.C.] is a Welder."  Second Am. Compl. ¶ 88.  Jones also notes that a foreman was "very condescending" towards him when he asked about working a particular job requiring a "clean background."  Id.. ¶ 92.  Finally, Jones recounts that a union steward told him that he could become a pipe inspector if he obtained training, but then told Jones that he was not eligible and would not be reimbursed for training.  Id.. ¶¶ 96–99.

Although this new information is not conclusory, Jones must do more than identify two individuals who have been promoted ahead of him to show intentional discrimination.  Even a generous reading of ¶ 88, which assumes that the two named members are white, and that "not a Journeyman" is superior to "helper," does not suggest intent.  Jones must give more information about the two helpers and their situation relative to himself.  See, e.g., Brown v. McDonough, 2022 WL 4773569 at *4 (W.D. Okla. Sept. 30, 2022) (allegation that two other white police officers were promoted ahead of plaintiff failed to show discriminatory intent); Jemaneh v. Univ. of Wyoming, 82 F. Supp. 3d 1281, 1304 (D. Colo.), aff'd, 622 F. App'x 765 (10th Cir. 2015) (plaintiff's allegation that 2–3 white classmates received passing grades while plaintiff student did not was insufficient to show discriminatory intent).  Similarly, Jones provides no context behind the union steward's apparently contradictory advice

12

about how to become a pipe inspector.  Jones implies that the steward denied his request for reimbursement and told him he could no longer be an inspector because of his race.  See Second Am. Compl. ¶¶ 96–99.  However, Jones pleads no facts suggesting a discriminatory motive, as opposed to other possible reasons for these actions.  Jones asserts that "[t]he Union paid for white members to go to the same training and paid white members to attend training." Second Am. Compl. ¶ 100. Jones fails to supply facts which would make this allegation helpful to his claim.  He fails to allege any facts about specific white members whose training was paid for by Local 798, and general allegations that 'something happened to somebody' are insufficient under Twombly and Khalik.  See Twombly, 550 U.S. at 570; Khalik, 671 F.3d at 1193.  At the pleadings stage, Jones only needs specific facts to support his claim, based on personal knowledge.[4]  Finally, it is not clear how the condescending attitude of a job foreman, who in any case is not alleged to be a member of Local 798, relates to Jones' claims in general.  See Second Am. Compl. ¶ 92.  Thus, because he has failed allege sufficient facts supporting an inference of intentional discrimination, Jones' claim for discrimination in advancement is dismissed.

---

[4] For example, if Jones had alleged based on his personal knowledge that some white members with similar backgrounds and qualifications had taken the same training at the same time and been compensated, these allegations could suggest a discriminatory motive for the steward's actions.  See, e.g., Phillips v. Orleans Cnty., 2019 WL 3088051 at *13 (W.D.N.Y. July 15, 2019) (employer's failure to discharge similarly situated younger employee for same infraction gave rise to inference of age discrimination).

4:20-cv-00585-CRK-CDL

### III.   Failure to Enforce the CBA under Title VII

Jones claims Local 798 has failed to enforce the terms of the CBA because Jones is black, in violation of Title VII.  See Second Am. Compl. ¶¶ 205–216.  Local 798 argues that Jones has not pled intent to discriminate, and that he does not assert disparate impact.  Def. Br. at 19–23.[5]  Because Jones again fails to plead sufficient facts to support his allegations, this claim is dismissed.

Title VII recognizes two types of claims: disparate treatment and disparate impact.  Carpenter v. Boeing Co., 456 F.3d 1183, 1187 (10th Cir. 2006).  For a disparate treatment claim plaintiff must allege intent to discriminate.  EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 773 (2015).  Disparate treatment under Title VII requires the same elements as disparate treatment under 42 U.S.C. § 1981.  See Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir. 1991) ("in racial discrimination suits, the elements of a plaintiff's case are the same . . . whether that case is brought under §§ 1981 or 1983 or Title VII").  For a disparate impact claim, plaintiff must allege that defendant's policy resulted in disparities between the protected class and the unprotected class.  Santana v. City of Denver, 488 F.3d 860, 866 (10th Cir. 2007).  Specifically, a plaintiff must demonstrate that a defendant "uses a particular employment practice that causes a disparate impact on the basis of race,

---

[5] Local 798 also argues that Jones has failed to exhaust administrative remedies for most of his claims under Title VII.  Specifically, Local 798 argues that Jones only filed an EEOC charge with respect to discrimination occurring at one union jobsite in Indiana in 2019, and therefore his claims of conduct in 2017 and 2018 have not been exhausted.  Def. Br. at 22–23.  Because Jones' claims are dismissed, the Court need not and does not address this argument.

4:20-cv-00585-CRK-CDL

color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(k)(1)(A)(i).  A plaintiff must allege that "a specific identifiable employment practice or policy caused a significant disparate impact on a protected group."  See Carpenter, 456 F.3d at 1193 (discussing elements needed to succeed on the merits of a disparate impact claim).  At the pleadings stage, a plaintiff must identify a policy responsible for "observed statistical disparities."  Smith v. City of Jackson, Miss., 544 U.S. 228, 241 (2005).  "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact."  Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc., 576 U.S. 519, 543 (2015).

As an initial matter, the Court has already found that Jones fails to plead discriminatory intent with respect to his § 1981 claim.  The pleading requirements for a disparate treatment claim are the same under both Title VII and § 1981.  See Drake, 927 F.2d at 1162.  Therefore, because Jones fails to plead sufficient facts to show intent to discriminate under § 1981, he also fails to show intent under Title VII, which is required for a disparate treatment claim.

Concerning Jones' claim of disparate impact under Title VII, it appears from Jones' brief and the second amended complaint that Jones has elected not to provide additional support for this claim.[6]  This Court previously explained that Jones failed

---

[6] As Local 798 notes in its motion dismiss, Jones has removed the word "disparate" before the word "impact" in his second amended complaint.  Def. Br. at 21; compare First Am. Compl. ¶ 120 with Second Am. Compl. ¶ 211.  This deletion, and lack of any other positive indication,  suggests that Jones is no longer pursuing a disparate

4:20-cv-00585-CRK-CDL

to adequately allege both statistical disparity and the specific policy responsible for such disparity.  See Jones, 2022 WL 17417980 at *26.  In his second amended complaint, Jones adds only more conclusory statements.  See, e.g., Second Am. Compl. ¶ 130 ("the union chose not to do anything to enforce the CBA"), ¶ 131 (referencing lack of "any efforts by the union to enforce the CBA"), ¶ 132 ("the Steward . . . did nothing to correct the behavior or otherwise enforce the CBA"), ¶ 133 ("Stewards consistently refuse to enforce the CBA"), ¶ 134 (saying stewards do not "tak[e] action to enforce the CBA's non-discrimination provisions").  These statements are conclusory, because they lack factual support.  See Frey, 41 F.4th at 1233.  Moreover, Jones has not attempted to identify any statistical disparity resulting from Local 798's discriminatory policy, which is required for a disparate impact claim.  See Smith, 544 U.S. at 241; Tex. Dep't of Hous., 576 U.S. at 543; Santana, 488 F.3d at 866.  Therefore, Jones has failed to state a claim under Title VII.

## **CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that Defendant's motion to dismiss is GRANTED; and it is further

**ORDERED** that Plaintiff's claims under 42 U.S.C. § 1981 are DISMISSED without prejudice pursuant to Fed. R. Civ. P. 12(b)(6);[7] and it is further

---

impact theory under Title VII.  Nevertheless, the Court considers whether Jones has stated a claim under this theory in his second amended complaint.

[7] Dismissal under Fed. R. Civ. Pro. 12(b)(6) is generally without prejudice, unless granting leave to amend would be futile.  See Wright & Miller, Fed. Practice and Pro., § 1357 (3d ed.); see also Brereton v. Bountiful City Corp., 434 F.3d 1213, 1219 (10th Cir. 2006).  Although Jones' second amended complaint fails to address the

4:20-cv-00585-CRK-CDL

**ORDERED** that Plaintiff's Title VII claim is DISMISSED without prejudice pursuant to Fed. R. Civ. P. 12(b)(6); and it is further

**ORDERED** that Plaintiff is granted leave to file an amended complaint within thirty days from the date of this order to cure the deficiencies of his Title VII and 42 U.S.C. § 1981 claims.  Should Plaintiff fail to file a third amended complaint the Court will issue a judgment dismissing Plaintiff's claims in accordance with this Order.

/s/ Claire R. Kelly
Claire R. Kelly, Judge*

Dated:      May 25, 2023
            New York, New York

---

deficiencies identified by the Court in its previous opinion, the Court is not prepared to say amendment would be futile and thus grants Jones leave to amend his complaint for a second time.
* Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

17